UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANGWEI WU,<br><br>        Plaintiff,<br><br>    v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>        Defendant. | Case No. 21-cv-03485-DMR<br><br>**ORDER ON MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 20 |

Plaintiff Shangwei Wu filed this action in San Francisco Superior Court against BMW of North America ("BMW") asserting violations of the California Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.*, related to his purchase of a used 2017 BMW X5 (the "vehicle"). [Docket No. 1-1 ("Compl.").] BMW removed the case on the basis of diversity jurisdiction on May 11, 2021. [Docket No. 1.] On the day of the initial case management conference and before any significant litigation took place, the parties filed a notice of settlement of all issues except attorneys' fees. [Docket Nos. 16-17.] Wu now brings this motion for attorneys' fees and costs ("Mot."). [Docket No. 19.] BMW filed an opposition ("Opp'n"), and Wu replied ("Reply"). This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the court grants the motion in part and denies it in part.[1]

**I.    BACKGROUND**

On July 9, 2020, Wu purchased the vehicle for $46,771.80, inclusive of license and registration fees. Compl. ¶ 6. The vehicle began exhibiting engine defects within sixteen hours of

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 11, 13.]

1   purchase, including a recurrent illumination of the "check engine" light, the "drivetrain
2   malfunction light," and the recurrent smell of fuel emanating from the vehicle during operation.
3   Declaration of Isaac S. Agyeman ("Agyeman Decl.") ¶ 8 [Docket No. 19-1]; *see* Compl. ¶ 13. Wu
4   brought the vehicle to BMW twice for repair, but BMW was unable to fix the defects. Agyeman
5   Decl. ¶ 8; *see* Compl. ¶¶ 16-18.

6   On March 23, 2021, Wu filed this lawsuit alleging breach of express warranty, breach of
7   implied warranty, and willful failure to comply with affirmative duties under the Song-Beverly
8   Act. After BMW removed the case, the parties initiated settlement negotiations. Agyeman Decl.
9   ¶ 9; Opp'n at 2. Wu proposed a full repurchase of the vehicle plus $10,000 in attorneys' fees and
10  costs. Agyeman Decl. ¶ 9; Opp'n at 2. BMW countered on June 18, 2021 by agreeing to
11  repurchase the vehicle and to pay $2,500 in fees and costs. Agyeman Decl. ¶ 9; Opp'n at 2. On
12  July 9, 2021, having reached agreement on the vehicle repurchase, Plaintiff responded with a fee
13  demand of $9,500. Opp'n at 2. BMW rejected that proposal and made a final fee offer of $4,000.
14  Agyeman Decl. ¶ 9. The parties signed a settlement agreement on August 12, 2021 for statutory
15  repurchase of the vehicle at $20,751.62 but failed to reach a resolution on fees. Agyeman Decl.
16  Ex. D ¶ 4. [Docket No. 19-5.] Instead, BMW acknowledged that Wu is the prevailing party and
17  agreed to pay reasonable attorneys' fees and costs in an amount to be determined by court order.
18  *Id.* ¶ 4(b).

19  **II.    LEGAL STANDARD**
20  In diversity actions such as this one, state law governs a party's right to attorneys' fees as
21  well as the method of calculation. *See Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999,
22  1004 (9th Cir. 2009). The Song-Beverly Act is a consumer protection statute with a fee-shifting
23  provision that entitles prevailing buyers to "a sum equal to the aggregate amount of costs and
24  expenses, including attorney's fees based on actual time expended, determined by the court to
25  have been reasonably incurred by the buyer in connection with the commencement and
26  prosecution of such action." Cal. Civ. Code § 1794(d). "By permitting prevailing buyers to
27  recover their attorney fees in addition to costs and expenses, [the California] Legislature has
28  provided injured consumers strong encouragement to seek legal redress in a situation in which a

lawsuit might not otherwise have been economically feasible." *Murillo v. Fleetwood Enters., Inc.*, 17 Cal. 4th 985, 994 (1998). This statutory right to attorneys' fees and costs is available to "consumers who successfully achieve the goals of their litigation through a compromise agreement." *Wohlgemuth v. Caterpillar Inc.*, 207 Cal. App. 4th 1252, 1263 (2012).

California courts use the lodestar analysis to determine reasonable attorneys' fees under Civil Code section 1794(d). *Robertson v. Fleetwood Travel Trailers, Inc.*, 144 Cal. App. 4th 785, 818-19 (2006); *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994). The lodestar amounts to "the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). This "lodestar analysis is generally the same under California law and Federal law." *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2020 WL 363006, at *2 (N.D. Cal. Jan. 22, 2020) (quoting *Rodriguez v. Cty. of Los Angeles*, No. 10-cv-6342, 2014 WL 8390755, at *2 (C.D. Cal. Dec. 29, 2014)).

The party seeking fees bears the initial burden of establishing the hours expended litigating the case. *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992); *Corbett v. Hayward Dodge, Inc.*, 119 Cal. App. 4th 915, 926 (2004); *see Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). The party must provide sufficient documentation of the tasks completed and the amount of time spent. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *Bernardi v. Cty. of Monterey*, 167 Cal. App. 4th 1379, 1398 (2008); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). The requesting party also must show that the "[t]he reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp.*, 22 Cal. 4th at 1095; *see also Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). "[T]he awarding of attorney fees is a highly fact-specific matter best left to the trial court's discretion." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 155 (2006).

Fee awards calculated under the lodestar method generally are presumed to be reasonable. *PLCM Grp.*, 22 Cal. 4th 1084 at 1097. However, the lodestar may be adjusted upwards or downwards based on certain factors in order to "fix a fee at the fair market value for the particular action." *Ketchum*, 24 Cal. 4th at 1132. "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying

1  augmentation of the unadorned lodestar in order to approximate the fair market rate for such
2  services." *Id.*

3  **III.   DISCUSSION**

4  Wu seeks a lodestar award of $13,638 for 27.7 hours of work performed by his counsel at
5  the law firm of Kaufman and Kavicky, including work on this fee motion. He requests a
6  multiplier of 1.2 to 1.5. Mot. at 2; Agyeman Decl. ¶ 5. He also seeks $725.80 in costs. Mot. at 2.

7  **A.   Reasonableness of Hourly Rates**

8  Courts must consider "the hourly amount to which attorneys of like skill in the area would
9  typically be entitled." *Ketchum*, 24 Cal. 4th at 1133. "The rates of comparable attorneys in the
10 forum district are usually used." *Heritage Pac.*, 215 Cal. App. 4th at 1009.; *see also Syers*
11 *Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 700 (2014) ("The determination of the
12 'market rate' is generally based on the rates prevalent in the community where the court is
13 located."). Typically, "affidavits of the plaintiffs' attorneys and other attorneys regarding
14 prevailing fees in the community, and rate determinations in other cases . . . are satisfactory
15 evidence of the prevailing market rate." *Heritage Pac.*, 215 Cal. App. 4th at 1009 (quoting *United*
16 *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)); *see Cardoso v.*
17 *FCA US LLC*, No. 20-cv-02250-JSC, 2021 WL 1176532 (N.D. Cal. Mar. 29, 2021). *See also* Civ.
18 L.R. 54-5(b)(3) (a fees motion must be accompanied by an affidavit with "[a] brief description of
19 relevant qualifications and experience and a statement of the customary hourly charges of each
20 such person or of comparable prevailing hourly rates or other indication of value of the services.").

21 The Kaufman & Kavicky law firm is based in Los Altos, which is within the Northern
22 District of California. Wu requests a $495 hourly rate for associate Isaac Agyeman and a $650
23 rate for work performed by partner Scott R. Kaufman. Agyeman has practiced law for nine years
24 and worked on lemon law cases such as this one since 2014. Agyeman Decl. ¶ 13. He has
25 litigated "hundreds of cases against auto manufacturers," the majority of which have settled. *Id.*

26 Kaufman has practiced law for twenty-four years and has represented "thousands of
27 consumers throughout the state of California in lemon law and auto fraud matters." *Id.* ¶ 14. He
28 recently served as the California chair of the National Association of Consumer Advocates and has

4

taught many courses and presented at conferences on lemon law and auto fraud. *Id.*[2]

BMW challenges Kaufman and Agyeman's requested rates and asks the court to apply lower rates of $500 and between $295 to $350, respectively. Opp'n at 7-8. BMW relies on *Kasai v. Mercedes-Benz USA LLC*, No. RG17859919 (Alameda Cty. Super. Ct. July 15, 2020), in which the court awarded Kaufman a $500 hourly rate. *See id.* at 7; Agyeman Decl. Ex. E at 4-5. As for Agyeman, BMW points to decisions in this judicial district awarding lower rates to attorneys with similar experience.

In determining the hourly rates for Kaufman and Agyeman, the court declines to consider cases cited by Wu from the Central and Southern Districts of California. These cases involve lawyers practicing outside this market. The decisions also do not discuss the lawyers' experience, so the court cannot determine whether they are appropriate comparators for determining the rates for the lawyers in this case. *See* Mot. at 8-9; Reply at 3-4.[3] Similarly, the cases cited by BMW are distinguishable because they involve hourly rates for attorneys based outside the Bay Area and at least one of the cases is not a lemon law matter.[4] As another court in this district noted with

---

[2] Wu did not submit sworn declarations by attorneys of comparable experience to support the requested $495 and $650 as reasonable hourly rates for litigating Song-Beverly cases in the San Francisco Bay Area. Instead, Agyeman states what several California plaintiffs' attorneys told him were their 2021 lemon law case rates. Agyeman Decl. ¶ 15. The court declines to consider this hearsay information. Also, because Agyeman's description omits key information such as the market in which the lawyers practice, the court cannot determine if the rates are relevant to this dispute. *See Ketchum*, 24 Cal. 4th at 1133 (requiring courts to consider the comparable rates in the "community" or "area").

Wu also points to three Song-Beverly cases that resulted in substantial fee awards. Mot. at 10. None of them are probative. Reasonable fees must be determined case by case. This matter settled shortly after it was filed in state court then removed. The three cases cited by Wu all went through trial and appellate review.

[3] On reply, Wu addresses *Base v. FCA US LLC*, 2020 WL 363006, at *4-5, but that case also involves Southern California-based lawyers. *Sherman v. Mr. Scooter*, No. CGC-20-582007 (S.F. Super. Ct. July 9, 2021), in which Wu's counsel was awarded fees under Civil Code section 1794(d), also does not shed light on the subject because the order does not provide the attorneys' hourly rates.

[4] BMW's non-lemon law decision, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 6903, 2020 WL 2086368, at *3 (N.D. Cal. Apr. 30, 2020), involves an attorneys' fees award for objectors to the Volkswagen clean diesel multi-district litigation.

5

1  respect to a similar Song-Beverly Act suit, "the prevailing rates charged in the San Francisco legal
2  market are among the highest in the state." *Bratton v. FCA US LLC*, No. 17-cv-01458-JCS, at *5
3  (N.D. Cal. Oct. 22, 2018) (noting that the "relevant forum" for consideration is the San Francisco
4  Bay Area). Accordingly, the court declines to consider rates for markets outside of this judicial
5  district.

6      Agyeman did not submit any evidence or court decision sufficient to support his requested
7  $495 hourly rate. The court finds persuasive the recent fee award in *Snider v. General Motors,*
8  *LLC*, No. 21CV000671 (Monterey Cty. Super. Ct. Dec. 10, 2021), in which a state court within
9  the geographic boundary of this judicial district applied a 2021 hourly rate of $450 for Agyeman.[5]
10 *See* Declaration of Isaac S. Agyeman ("Agyeman Decl. II") Ex. B [Docket 21-3.] This rate finds
11 further support in the United States Consumer Attorney Fee Survey Report cited in *Cardoso*, 2021
12 WL 1176532, at *3 (noting a $450 average hourly rate for consumer attorneys in San Francisco
13 with 6-10 years of experience). The court thus awards Agyeman a 2021 rate of $450.

14     With respect to Kaufman, Agyeman's declaration states in a conclusory manner that
15 Kaufman's current (i.e., 2022) hourly rate is $650. Wu does not provide any additional evidence
16 or court decision to support the requested rate. BMW points out that in *Kasai*, No. RG17859919,
17 in which the court awarded $55,080.30 to Wu's counsel, the court found the requested rates
18 "excessive" and applied a 2020 hourly rate of $500 for all of the plaintiff's attorneys, including
19 Kaufman. Opp'n at 7; Agyeman Decl. Ex. E. The court also applied a multiplier of 1.5 "in light
20 of [Kaufman's] years and depth of experience." Agyeman Decl. Ex. E. In response, Kaufman
21 avers that at the hearing in *Kasai*, he explained to the court that he "very much appreciated the
22 multiplier, but, that the hourly rate was lower than one she had personally given [him] years
23 earlier." Declaration of Scott Kaufman ("Kaufman Decl.") ¶¶ 3-4 [Docket No. 21-4.] The court
24 "asked [him] if [he] wanted to change it to [his] requested hourly rate and give up on the
25 multiplier," but he "declined to accept that offer." *Id.* ¶ 4. It is pointless to speculate about how

---

[5] Nearly all of the work on Wu's case was performed in 2021. There are only 3 billing records in early January 2022 and all relate to billings for this fee motion.

1   the judge in *Kasai* arrived at her decision to award Kaufman a 2020 rate of $500 plus a 1.5

2   multiplier. This court finds that a 2021 rate of $500 is low for Kaufman, a Bay Area-based partner

3   who has litigated lemon law cases for 24 years, particularly given that his associate Agyeman has

4   established a $450 hourly rate based on 8 years of experience. The court awards Kaufman a 2021

5   rate of $600. This rate finds support in the United States Consumer Attorney Fee Survey Report

6   cited in *Cardoso*, 2021 WL 1176532 at *3 (noting a $638 average hourly rate for consumer

7   attorneys in San Francisco with 26-30 years of experience).

   Finally, Wu seeks fees for two non-lawyers at $195 and $150 hourly rates for a total of $270. He does not provide any information about their roles or backgrounds; he simply includes their timeslips in his exhibits without explanation or foundation. *See* Agyeman Decl. Ex. A; Opp'n at 7; Reply at 4; *see generally* Mot. Because Wu fails to provide any foundational evidence supporting the fee request for these two individuals in violation of this court's local rules, the court declines to award fees for them. *See* Civ. L.R. 54-5(b)(3); *see Base v. FCA US LLC*, 2020 WL 363006, at *5 (declining to award fees where declaration does not state experience or qualifications to determine a reasonable rate).

## B.   Reasonableness of Hours Expended

Next, the court "must carefully review attorney documentation of hours expended." *Ketchum*, 24 Cal. 4th at 1132. "The attorneys' submissions form the starting point for the trial court's determination of the 'hours reasonably expended' component of the lodestar analysis." *Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1324 (2008) (internal citations omitted); *see also* Civ. L.R. 54-5(b)(2) (requiring "[a] statement of the services rendered by each person for whose services fees are claimed, together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained."). "'Reasonably spent' means that time spent 'in the form of inefficient or duplicative efforts is not subject to compensation.'" *Horsford*, 132 Cal. App. 4th at 394 (quoting *Ketchum*, 24 Cal. 4th at 1132). The defendant "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. Cty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995).

Wu's counsel billed a total of 27.7 hours, including time spent litigating this fee motion. The requested hours are supported by itemized timeslips. Agyeman Decl. ¶¶ 4-5, Ex. A. BMW objects to certain timeslips. First, BMW contends that Agyeman should not have billed a total of 0.6 hours on September 2, 13, and 27, 2021 for communications he initiated regarding the vehicle's surrender as part of the repurchase process. BMW explains that ordinarily, "a third-party reaches out to the Plaintiff or Plaintiff's counsel and schedules a surrender date," and asserts that Agyeman should not have made "multiple unilateral attempts to contact the third-party." Opp'n at 5. In response, Wu explains that the third-party reacquisition coordinator reached out to Wu's counsel first. Reply at 3. Agyeman then followed up with two different individuals to schedule the vehicle surrender, which apparently occurred on September 28, 2021. Agyeman Decl. II ¶¶ 3-4. The court is satisfied by this explanation of Agyeman's back-and-forth with the third-party surrender service, which amounted to slightly over half an hour of time and does not point to any inefficiencies in how Agyeman litigated the case.

BMW also challenges 2.5 hours billed by Agyeman to draft written discovery requests because Agyeman did not ultimately serve those them. *Id.* at 4-5; *see* Declaration of Mark W. Allen ("Allen Decl.") ¶ 4 [Docket No. 20-1] (attestation by BMW's counsel that "[d]uring the pendency of this litigation, my office has not been served with any discovery from Plaintiff in this matter"). Wu responds that the bills do not actually include that time, and that BMW's challenge "reflects a poor understanding of Plaintiff's billing records." Reply at 1, 3. Wu's records are, in fact, confusing on this point. Agyeman's March 22, 2021 time slip shows a billing of 2.5 hours for "Draft[ing] written discovery requests to Defendant (including special interrogatories, requests for admission, and request for production)." Agyeman Decl. Ex. A at 5. However, the total time and expense summary indicates 2.5 hours of non-billable time for Agyeman. *See* Agyeman Decl. Ex. B. After performing its own review and calculations, the court finds that Wu has, in fact, excluded the 2.5 hours at issue from his fee request.

BMW further disputes 0.4 hours billed by Kaufman for an "initial conference with referring attorney," which BMW posits was "vague and unnecessary given that Plaintiff's counsel held a separate call with him on March 2, 2021 . . . to perform client intake." Opp'n at 6; *see*

8

Agyeman Decl. Ex. A at 5.  Finally, BMW challenges as "duplicative" two timeslips billed by Agyeman on August 6, 2021 of 0.1 hour each described as "[r]eceive and review follow up email from opposing counsel re: status of settlement agreement."  Opp'n at 6; *see* Agyeman Decl. Ex. A at 3.  According to BMW's counsel, "I have searched my inbox for email communications to and from Plaintiff's counsel for August 6, 2021 and have only found one email communication" about the settlement agreement.  Allen Decl. ¶ 2.  Wu does not respond to these remaining objections and therefore concedes them.  Accordingly, the court reduces 0.1 hours from Agyeman's total and 0.4 hours from Kaufman's total.  Because Wu does not offer any support for the two non-lawyer timekeepers, as discussed above, the court does not award the requested $270 for their time.

### C.     Multiplier

"[T]he Song-Beverly Act permits the trial court to award a multiplier where it deems appropriate under the lodestar adjustment method." *Base*, 2020 WL 363006, at *2; *see Robertson*, 144 Cal. App. 4th at 819.  The court considers "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).  However, "a trial court should not consider these factors to the extent they are already encompassed within the lodestar." *Id.* at 1138. "[A] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation." *Id.* at 1139.  "[T]he party seeking a fee enhancement bears the burden of proof." *Id.* at 1138.

Wu asks the court to apply a multiplier between 1.2 and 1.5.  Mot. at 12.  He argues that a multiplier is warranted due to (1) the delay in receiving payment; (2) his counsel's quality, skill, and results obtained; (3) the extent that litigating this case precluded his counsel from taking on other matters, and (4) the contingent nature of the fee award.  *Id.*  He also observes that his counsel "ha[s] received quite a few multipliers over the years." *Id.*

A modest 1.1 lodestar enhancement is warranted in light of the excellent result obtained by

9

Wu's counsel. A greater enhancement is not warranted because this case did not involve any novel or complex issues and the contingency risk was low and of brief duration.

### D. Costs

Wu seeks an award of $725.80 in filing and service-related expenses related to this litigation. The Song-Beverly Act authorizes the court to award to the prevailing party all costs and expenses "reasonably incurred by the buyer in connection with the commencement and prosecution of this action." *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 137-38 (1995); *see* Cal. Civ. Code § 1794(d). BMW does not oppose this award. Accordingly, the court finds these costs reasonable.

### IV. CONCLUSION

Based on the foregoing, the court grants in part and denies in part Wu's motion for attorneys' fees and costs. The court awards Wu's counsel **$13,084.50** in fees based on a lodestar of $11,895, enhanced by a 1.1 multiplier, in accordance with the following calculations:

| Attorney | Hours | Billing Rate | Total |
|---|---|---|---|
| Isaac Agyeman | 23.5 | $450 | $10,575.00 |
| Scott Kaufman | 2.2 | $600 | $1,320.00 |
| Lodestar Total | | | $11,895.00 |
| **Lodestar x 1.1 multiplier** | | | **$13,084.50** |

The court also awards **$725.80** in costs. In light of the parties' settlement of all claims in matter, the Clerk shall close the case and enter judgment in accordance with this order.

**IT IS SO ORDERED.**

Dated: July 18, 2022



Donna M. Ryu
United States Magistrate Judge